UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                                 CASE NO. 13-20156
v.                            HONORABLE GEORGE CARAM STEEH

DANNY JUAREZ,

        Defendant.

_____/

**ORDER DENYING DEFENDANT'S MOTION
TO SUPPRESS WIRETAP EVIDENCE (Doc. 258)**

Now before the court is defendant Danny Juarez's motion to suppress the fruits of the wiretap used to intercept telephone conversations and evidence on the grounds that (1) the government failed to establish the "necessity requirement" by failing to show that traditional investigative techniques were insufficient, and (2) the government failed to properly minimize non-incriminating calls. A hearing on the motion was heard on May 11, 2015. At that time, the parties sought leave to file supplemental briefs, which this court granted, and the parties have now done so. Having duly considered all of the written submissions and oral argument, and for the reasons set forth below, defendant's motion shall be denied.

### I. Factual Background

Defendant Danny Juarez has been indicted along with twenty-two others of federal narcotics charges arising out of a multi-national conspiracy involving multi-kilograms of cocaine transported from Mexico to points in the United States including California,

Michigan, Ohio and Maryland.  (Doc. 168).  Defendant is charged with transporting and/or distributing cocaine, loading and unloading cocaine and cocaine proceeds, and re-packaging and/or storing cocaine.   *Id.* at ¶ 5.  Defendant seeks to suppress evidence obtained through a wiretap issued by a San Bernardino Superior Court Judge on January 24, 2012.  The wiretap investigation began on that same day and continued for 30-days.

In connection with the wiretap application, Detective John DeBets, a 29-year veteran of the Los Angeles County Sheriff's Department, submitted an affidavit to intercept the wire communications of a cell phone used by defendant.  In his affidavit, he identifies defendant as a suspected courier of a major drug organization and overseer of the stash of drugs and illicit proceeds.  (Doc. 258, Ex. 2 at ¶ 20(c)).  At the time that Detective DeBets submitted his affidavit, the investigation had resulted in the arrest of a number of individuals, the seizure of large quantities of narcotics, the seizure of large sums of illicit proceeds, and the seizure of narcotic related contraband consistent with drug trafficking.  *Id.* at ¶ 32.  Although the investigation had yielded the seizure of 33 kilograms of cocaine in Barstow, California in December, 2011, *id.* at ¶¶ 92-93, investigators had not identified most of the conspirators in California, *id* at ¶ 20, and in his affidavit, Detective DeBets stated that the wiretap was necessary to identify how the cocaine was being imported, where the narcotics and illicit proceeds were stored, and the day-to-day operations of the organization.  *Id.* at ¶¶ 27, 61.  In Detective DeBets' affidavit, he discussed in great detail the investigative steps taken and the evidence collected to that point of the investigation, and explained why those traditional investigative techniques actually employed, or those not used, were or would be insufficient.

## II. Analysis

## A.     Governing Law

Although the warrant in question was issued by a California state court, federal law governs defendant's motion to suppress. *See United States v. Shields*, 978 F.2d 943, 945-46 (6th Cir. 1992) (federal law governs question of validity of state issued search warrant in a federal criminal prosecution); *United States v. Kelley*, 596 F. Supp. 2d 1132, 1141 (E.D. Tenn. 2009) (relying on decisions of the Eighth, Seventh, Second, First and Third Circuits holding that federal law governs the admissibility of evidence obtained as the result of state-authorized wiretaps).

## B.     The Necessity Requirement

Defendant argues that the government failed to exhaust traditional investigative techniques before applying for a wiretap in violation of 18 U.S.C. § 2518(1)(c). The Title III "necessity requirement" mandates that an application for a wiretap order contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." *United States v. Stewart*, 306 F.3d 295, 304 (6th Cir. 2002) (quoting § 2518(1)(c)). "The purpose of the necessity requirement is to ensure that a wiretap is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." *United States v. Rice*, 478 F.3d 704, 710 (6th Cir. 2007) (internal quotation marks and citation omitted). The necessity defense also ensures that a wiretap not be impermissibly used as the "initial step in [a] criminal investigation." *United States v. Giordano*, 416 U.S. 505, 515 (1974). But there is no need that a wiretap be only used as a last resort. *United States v. Kerrigan*, 514 F.2d 35, 38 (9th Cir. 1975).

-3-

In order to comply with the necessity requirement of Title III, "the government is not required to prove that every other conceivable method has been tried and failed or that all avenues of investigation have been exhausted." *United States v. Alfano*, 838 F.2d 158, 163 (6th Cir. 1988). Rather, "[a]ll that is required is that the investigators give serious consideration to the non-wiretap techniques prior to applying for wiretap authority and that the court be informed of the reasons for the investigators' belief that such non-wiretap techniques have been or will likely be inadequate." *Id.* at 163-64 (internal quotation marks and citation omitted). In order to satisfy the necessity requirement, the government cannot rely on a purely conclusory affidavit unrelated to the case, but must set forth enough factual specificity to show that the wiretap is not being employed as the initial step in a criminal investigation. *United States v. Landmesser*, 553 F.2d 17, 20 (6th Cir. 1977). But the burden on the government to show necessity is not a heavy one. *Id.* "[C]onsiderable discretion rests with the issuing judge in deciding whether other investigative methods might be successfully employed." *Id.* (internal quotation marks and citations omitted).

"Because the necessity requirement is a component of Title III, and because suppression is the appropriate remedy for a violation under Title III, where a warrant application does not meet the necessity requirement, the fruits of any evidence obtained through that warrant must be suppressed." *Rice*, 478 F.3d at 710. However, "a wiretap authorization order is presumed proper, and a defendant carries the burden of overcoming this presumption." *United States v. Quintana*, 70 F.3d 1167, 1169 (10th Cir. 1995); *see United States v. Feldman*, 606 F.2d 673, 679 n.11 (6th Cir. 1979) ("It is well settled that in seeking suppression of evidence the burden of proof is upon the defendant to display a violation of some constitutional or statutory right justifying suppression.") District courts are

-4-

to give great deference to the authorizing court.  *United States v. Corrado*, 227 F.3d 528, 539 (6th Cir. 2000).

Defendant argues that the government's affidavit, submitted to the authorizing court, was comprised merely of boilerplate language and lacked the factual underpinnings necessary to satisfy the necessity requirement.  A careful review of the affidavit, however, reveals that it sets forth a factual basis for its proffer that ordinary investigative techniques have been and will be insufficient or dangerous, and satisfies the requirements of § 2518(1)(c).  Significantly, as the government avers in its response, the investigation was not undertaken merely to determine if defendant was engaged in narcotics distribution, but to identify and disrupt a high-volume pipeline of narcotics with conspirators in Mexico and throughout the United States.  As identified in Detective DeBet's affidavit, the purpose of the wiretap was (1) to identify the identification of key personnel of the drug trafficking organization, (2) to discover the identity and role of all of the target subjects' suppliers of illegal narcotics, (3) to discover the identity of the target subjects' suppliers of illegal narcotics, (4) to discover the stash locations where the organization's supplies of illegal narcotics are kept prior to distribution, (5) to discover the management and disposition of proceeds generated in the organization, (6) to discover the methods and routes used by the organization to import illegal narcotics into the United States and to deliver the illegal narcotics to various states; and (7) to obtain evidence beyond a reasonable doubt against the target subjects and later identified conspirators. (Doc. 258, Ex. 2 at ¶¶ 27, 61).

In his affidavit, Detective DeBet explained why traditional investigative techniques were insufficient to meet these goals. Specifically, he explained that many of the traditional investigative techniques actually used or deemed ineffective were insufficient because of

the necessarily covert nature of narcotics investigation.  Detective DeBet explained that narcotics' evidence, such as the drugs themselves, records or cell phones used in furtherance of the conspiracy, are easily destroyed or discontinued in their use; thus, it is critical not to alert drug traffickers of the existence of a larger investigation.  For this reason, relying on interviews, search warrants, and calling identified members of the drug trafficking organization before the grand jury before fully identifying the larger organization would jeopardize the goals of the investigation.

Contrary to defendant's argument, Detective DeBet painstakingly referenced the specific facts underlying the investigation, including among other things, evidence that (1) the tractor-trailer driver and passenger stopped while transporting 33 kilograms of cocaine had limited to no knowledge of the day to day operations of the conspiracy and refused to cooperate with law enforcement, and law enforcement did not arrest those individuals for fear that doing so would cause other members of the conspiracy to abandon, destroy or flee thus damaging or destroying the on-going investigation, *id.* at ¶¶ 63, 90-94, (2) defendant used counter surveillance measures and evasive tactics, thus, causing investigators to abort traditional surveillance measures to avoid jeopardizing the investigation, *id.* at ¶ 84, (3) closed circuit television monitoring of the area suspected as narcotics and illicit proceeds loading site was insufficient as it did not reveal contents of boxes and bags and did not gather evidence as to conversations, agreements, and other arrangements relevant to the conspiracy, *id.* at ¶¶ 111-119, and (4) trash searches of defendant's location were not likely to produce relevant evidence because (a) conspirator Alfredo's residence is located across the street from defendant's residence and Alfredo has surveillance cameras on his property, (b) defendant's residence is located on a lightly

-6-

traveled street with two choke points making surveillance easily detectable, and (c) since the December 17, 2011 seizure of cocaine, defendant and other co-conspirators have displayed that they were extremely alert to the fact that law enforcement may be investigating them.  *Id.* at ¶¶ 120-22.

In addition, Detective DeBets also thoroughly discussed the physical surveillance methods law enforcement used leading directly to the seizure of 33 kilograms of cocaine on December 17, 2011.  *Id.* at ¶¶ 71-105.  Detective DeBets explained that "physical surveillance, without the aid of wire intercepts, rarely provides enough information to link specific meetings with specific narcotics transactions" and that "prolonged, regular surveillance" without the aid off wiretap information, "increases the opportunities for detection."  *Id.* at ¶¶ 102, 104.

Defendant argues that the facts of this case are akin to those in *Rice*, 478 F.3d at 711, where the Sixth Circuit affirmed the district court's decision to suppress the fruits of the wiretap because the government had failed to establish the necessity requirement.  In that case, the agent's affidavit averred that physical surveillance had been conducted but only with limited success.  *Id.* at 707.  In fact, the agent testified at the suppression hearing that agents had not conducted *any* physical surveillance.  *Id.*  Based on this glaring misstatement of fact, the district court ruled that it could not afford the deference ordinarily due to the authorizing court.  *Id.* at 709.  In sharp contrast, in this case, there is no suggestion that any of Detective DeBet's affidavit was untrue or misleading.  Defendant complains that a wiretap was not necessary because agents were in the process of obtaining a closed-circuit television monitor for the outside of defendant's home and of the alleged stash/loading area.  (Doc. 258, Ex. 2 at ¶¶ 111-18).  In his affidavit, Detective

DeBet averred that the closed-circuit televisions were only somewhat useful as they would not show what was in the bags or boxes unloaded and would not reveal conversation, agreements, and arrangements. *Id.* at ¶ 119. Contrary to defendant's argument, Detective DeBet's claim that a wiretap was necessary in addition to the use of closed-circuit televisions, which were of limited value, is nothing like the misleading statements that led to a defective necessity finding in *Rice*.

Defendant also criticizes Detective DeBet's affidavit because he avers that grand jury testimony would be insufficient because he was aware of no witnesses who could testify as to the full scope of the drug trafficking organization, and in any event, individuals generally are not willing to testify in grand juries about narcotics trafficking because of fears for the physical safety for themselves and their families, and the risk that witnesses would alert other members of the organization and jeopardize the investigation. *Id.* at ¶¶ 125-26. Detective DeBet's opinion about the efficacy of grand jury testimony was based on his 19 plus years of experience with the Los Angeles County Sheriff's Departments Narcotics Bureau, and based on his extensive training and experience in numerous narcotic investigations, including his familiarity with the methods and tactics employed by narcotic traffickers in general, as well as the methods and tactics employed by large scale Mexican based drug trafficking organizations. *Id.* at ¶¶ 3-9. The fact that Detective DeBet's statements about the inadequacy of using grand jury testimony apply equally in other large scale narcotics trafficking cases does not render his opinion insufficient. *See Landmesser*, 553 F.2d at 20. Given Detective DeBet's extensive law enforcement background in investigating drug traffickers, defendant's claim that his opinion that grand jury testimony would not be effective amounts to "rank speculation" lacks merit.

-8-

There is no question that Detective DeBets provided the court with a detailed and thorough picture of the specific traditional investigative techniques used to that point in time and why they were insufficient to accomplish the goals of the investigation, which was not limited to merely detecting defendant's crimes, but to dismantling a large scale multi-national and interstate narcotics distribution organization. The warrant application meets the necessity requirement, and defendant's motion to suppress the evidence obtained through that warrant shall be denied.

**C.      Minimization**

**1.      Whether the Government Properly Minimized Interceptions**

Defendant also argues the fruits of the wiretap should be excluded in their entirety because the government allegedly breached its duty to minimize calls unrelated to the drug conspiracy. Title III imposes a duty on the government to conduct surveillance in a manner that minimizes the interception of nonpertinent calls which are not authorized to be recorded under the wiretap. 18 U.S.C. § 2518(5); *see United States v. Patel*, 579 F. App'x 449, 457 (6th Cir. 2014). In determining whether the government has complied with its duty, the court applies an objective reasonableness standard. *Scott v. United States*, 436 U.S. 128, 137 (1978). The Supreme Court has explained that the minimization statute "does not forbid the interception of all nonrelevant conversations, but rather instructs the agents to conduct the surveillance in such a manner as to 'minimize' the interception of such conversations." *Id.* at 140 (internal quotation marks and citations omitted). The defendant bears the burden of production and persuasion in challenging the government's compliance with the minimization requirement. *United States v. Giacalone*, 853 F.2d 470, 482 (6th Cir. 1988). A defendant may not rely on generalized complaints that the

-9-

government failed to fulfill its duty to minimize, but where the government provides defendant with the tapes made during electronic surveillance, the defendant must identify specific conversations that were not minimized.  *Id.*; *see United States v. Carter*, 449 F.3d 1287, 1295 (D.C. Cir. 2006) (where defendant failed to identify specific conversations that should not have been intercepted or a pattern of such conversations, issue of minimization not in play).

Moreover, "[i]t is not enough for the defendant[] to identify particular calls which [he] contend[s] should not have been intercepted; [he] must establish a pattern of interception of innocent conversations which developed over the period of the wiretap."  *United States v. Lawson*, 780 F.2d 535, 540 (6th Cir. 1985) (internal quotation marks and citations omitted).  In cases of "wide-ranging conspiracy," the government is granted wide latitude in intercepting calls.  *Scott*, 436 U.S. at 140.  When evaluating whether the government acted reasonably in minimizing nonpertinent calls, court consider a variety of factors including: "the nature and scope of the criminal investigation; the [g]overnment's reasonable expectations of the character of conversations; and, the extent of judicial supervision over the surveillance."  *United States v. Feldman*, 606 F.2d 673, 678 (6th Cir. 1979) (collecting cases).  Other factors for the court to consider in determining whether proper minimization occurred are "the number of target individuals, the ambiguity of the intercepted conversations, [and] the complexity of the acts under investigation."  *United States v. Ozar*, 50 F.3d 1440, 1447 (8th Cir. 1995).  The court may also consider the length of the call, the use of coded language, the scope of the criminal enterprise, and the agent's reasonable expectation of the content of a call.  *United States v. Macklin*, 902 F.2d 1320, 1328 (8th Cir. 1990).  The point at which a call is intercepted may also have a bearing on

whether government agents properly minimized nonpertinent calls, as the government may need to intercept more calls early in the surveillance in order "to establish categories of nonpertinent calls which will not be intercepted thereafter." *Scott*, 436 U.S. at 141.

Defendant argues that all evidence intercepted by the wiretap should be suppressed based on the government's alleged failure to properly minimize non-incriminating calls. Even if defendant shows the government failed to fulfill its minimization duties, the relief defendant seeks may be overly broad. The ordinary remedy for a failure to minimize is the exclusion of the statements improperly obtained. *See United States v. West,* 589 F.3d 936, 939 (8th Cir. 2009); *United States v. Cleveland*, 964 F. Supp. 1073, 1091 (E.D. La. 1997) (citing *United States v. Gaytan*, 74 F.3d 545 (5th Cir. 1996)). In order to grant the sweeping relief of suppressing the entirety of the intercepted calls, defendant must show that the government's failure to minimize nonpertinent calls was of such magnitude as to render the entire investigation "tainted." *United States v. Charles*, 213 F.3d 10, 23 (1st Cir. 2000); *Cleveland*, 964 F. Supp. at 1091-92 (defendant must show the violations were of "egregious magnitude, which were in flagrant disregard of the duties of minimization"); *United States v. West*, No. 06-20185, 2009 WL 4506420, at *1 (E.D. Mich. Nov. 30, 2009) ("suppression of all wiretap evidence is only appropriate when the failure to minimize is egregious.").

In his motion to suppress, defendant relies solely on the fact that over the 30-days that the electronic surveillance was in operation, there were allegedly 781 non-incriminating calls, yet based on the line reports provided to defendant by the government, less than two-percent were minimized. At oral argument, however, the government represented that much fewer calls were intercepted than represented on the line sheets. The government

-11-

offered to file a supplemental brief to address the issue and has now done so.  In its supplemental brief, the government proffers that Los Angeles sheriff deputy Joseph Lellek is prepared to testify regarding the minimization performed in this case as follows: (1) there were only 211 intercepted calls; the 718 "sessions" relied upon by defendant included text messages, unanswered calls, calls going directly to voicemail when no message was left, and times when the target cell phone merely "pinged" with a new cellular tower, and double or even triple counting calls caused by the cell phone "switching" towers during a call; (2) of the 211 intercepted calls, only 56 calls lasted longer than two minutes; (3) calls lasting longer than two minutes are not minimized because of the time required for a call to be answered and for listening agents to determine whether a call is pertinent; (4) of the calls lasting longer than two minutes, 27 calls were minimized; and (5) Los Angeles County Sheriff's Department monitors are trained to minimize calls by stopping interception when the conversation appears to be nonpertinent and then conducting spot checks to see if the call has turned to pertinent conversation.  (Doc. 269 at ¶¶ 2-7).  At oral argument, defendant also argued that session 29 demonstrated the government's failure to properly minimize nonpertinent calls as that session lasted 39 hours, 56 minutes, and 21 seconds yet was still intercepted.  In response, deputy Lellek states that no audio communication was intercepted in connection with that session at all, likely because the automated signal to terminate the session failed to occur.  *Id.* at ¶ 8.  Deputy Lellek explained that sessions identified as "undetermined call activity" are sessions with no text message or audio content.  *Id.* at ¶ 2.

The government responds that defendant cannot rely solely on statistical evidence to support his argument, but must present evidence that specific calls should have been

minimized. *Giacalone*, 853 F.2d 482. The Supreme Court has recognized that statistics may be helpful, but "blind reliance on the percentage of nonpertinent calls intercepted is not a sure guide to the correct answer." *Scott*, 436 U.S. at 140. Even a high percentage of non-minimized calls does not by itself suggest that the agents acted unreasonably, as a variety of factors may explain why agents intercepted certain nonpertinent calls, such as the calls may have been very short, they may have been one-time calls, or the calls were ambiguous or involved guarded or coded language. *Id.* The government also relies on *United States v. Amaya*, No. 10-20338, 2012 WL 1134781, *5 (E.D. Mich. Apr. 4 2012) (Borman, J.), where the court rejected defendant's improper minimization argument which was based on taking the total number of calls for each wiretap and dividing that number by the number of calls minimized for the wiretap. The court found that method infirm because it did not account for calls which were not answered. *Id.* The court stressed that a defendant cannot rely on mere percentage of calls minimized to establish insufficient minimization, but must show a pattern or practice of listening to innocent calls. *Id.* The same analysis applies here as defendant does not account for the many calls which were not answered, or lasted for such a de minimus period of time that minimization would not be feasible.

In his supplemental brief, defendant claims that there are over fifty calls of more than two-minutes in duration that were not properly minimized. Of those fifty sessions alleged, however, twenty-eight were identified as "undetermined." Deputy Lellek has explained that sessions identified as "undetermined" are sessions containing no text message or audio content, possibly explained as the cell phone "pinging" with a new cell tower; thus, there could be no possibility of minimizing those calls. *Id.* at ¶ 2. Defendant argues that the line

sheets indicate when there is "no audio," and because the sessions identified as "undetermined" do not also state "no audio," they required minimization. In support of this argument, defendant directs the court's attention to several line sheets which state "no audio," but those line sheets involved incomplete calls that were not answered. Defendant has not refuted the government's claim that sessions are deemed "undetermined" whenever they lack audio content. Thus, defendant necessarily has not and cannot show that sessions identified as "undetermined" warrant minimization.

Defendant also argues six calls identified as "incomplete" should have been minimized. Deputy Lellek explained that "incomplete" calls are those calls which were not answered. *Id.* at ¶ 2. Clearly, the government would have no obligation to minimize an unanswered call. That leaves only seventeen calls which defendant complains should have been minimized. Of those seventeen, ten lasted less than three minutes. A great many courts have "found that two to three minutes is a reasonable period of time within which to make an initial judgment as to the pertinence of a conversation." *United States v. Mansoori*, 304 F.3d 635, 648 (7th Cir. 2002) (collecting cases). This is especially true in a major drug conspiracy involving many targets whose identities may be difficult to ascertain. *United States v. Losing*, 560 F.2d 906, 900 n.1 (8th Cir. 1977).

Having eliminated those interceptions which involved no audio content, represented unanswered calls, and lasted less than three minutes, that leaves defendant with only seven interceptions of nonpertinent calls which he claims the government should not have intercepted. The non-minimization of these few calls does not warrant suppression of the fruits of the wiretap. Defendant has failed to show that the government engaged in an

improper pattern of intercepting innocent conversations over the period of the wiretap.

## 2.   Evidentiary Hearing

Defendant also moves for an evidentiary hearing on the issue of whether the government failed to minimize nonpertinent calls and either deliberately or recklessly filed false or misleading reports as to the number of calls minimized.  By prior order, the court denied without prejudice defendant's motion for an evidentiary hearing on the issue of minimization and instructed the government to respond by proffer, declaration, and argument at the motion hearing.  The Sixth Circuit has ruled that in order to justify an evidentiary hearing on the issue of whether the government properly minimized nonpertinent calls, the defendant must show some issue of contested facts.  *Giacolone*, 853 F.2d at 483.  Defendant relies solely on his claim that a small percentage of calls were minimized compared to the number of calls identified as non-incriminating, but the government agents acted reasonably in not minimizing the majority of "sessions" identified on the line sheets, as a great many of the sessions contained no audio content, represented calls which were not answered at all, or lasted less than three minutes.  As to those handful of nonpertinent calls lasting more than three minutes which were not minimized, defendant has not met his burden of showing that the government wrongfully persisted in a pattern of intercepting nonpertinent conversations.  Having failed to show a genuine issue of contested fact, an evidentiary hearing is not warranted.

## IV. Conclusion

For the reasons set forth above, defendant's motion to suppress based on the necessity requirement and improper minimization (Doc. 258) is DENIED.  IT IS FURTHER

ORDERED that defendant's motion for an evidentiary hearing regarding minimization is

DENIED.

      **IT IS SO ORDERED.**

Dated:  June 4, 2015

                                        s/George Caram Steeh

                                        GEORGE CARAM STEEH

                                        UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
June 4, 2015, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk